# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION**

Civil Action No. _____

| | | |
|---|---|---|
| NUVASIVE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | **INJUNCTIVE RELIEF SOUGHT** |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL JONES, and KENNETH | ) | |
| KORMANIS, | ) | |
| Defendants. | ) | |
| _____ | ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

For its Complaint against Michael Jones ("Jones") and Kenneth Kormanis ("Kormanis") (collectively "Defendants"), NuVasive, Inc. ("NuVasive"), through its attorneys, alleges that:

**Nature of the Action**

1.      NuVasive files this action because Defendants – two former sales representatives affiliated with one of NuVasive's exclusive distributors, InoSpine, LLC ("InoSpine") – are violating the reasonable non-solicitation and non-competition obligations they owe to InoSpine and NuVasive.   More specifically, Jones began surreptitiously selling competitive products approximately four (4) years prior to terminating his relationship with InoSpine and NuVasive, and both Defendants are now doing so.   Accordingly, NuVasive asks this Court to: (1) issue preliminary and permanent injunctions which require Defendants to comply with the contractual obligations they owe to NuVasive; and (2) award NuVasive damages against Defendants.

**The Parties**

2.      NuVasive is a citizen of Delaware and California.  It is incorporated under the laws of Delaware, and maintains its principal place of business in San Diego, California.  It conducts

1

business in North Carolina, in part, through its exclusive distributor, InoSpine and InoSpine's sales representatives.

3.      Jones is a former sales representative of InoSpine.  He is a citizen of the State of North Carolina who, upon information and belief, resides in Cornelius, North Carolina. Upon information and belief, Jones is the sole shareholder of Quinn Michael Inc. ("QMI") and is a member of ReAlign Spine, LLC ("ReAlign Spine").

4.      Kormanis is a former sales representative for InoSpine.  He is a citizen of the State of North Carolina, who, upon information and belief, resides in Greensboro, North Carolina.  Upon information and belief, Kormanis is a member of ReAlign Spine.

## Jurisdiction and Venue

5.      This Court has original jurisdiction of this case under 28 U.S.C. § 1332 because this is a civil action between citizens of different states in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      Venue for NuVasive's request for equitable relief is proper in the Middle District of North Carolina pursuant to 28 U.S.C. § 1391 as: (a) Kormanis resides in this judicial district; and (b) a substantial part of the events or omissions giving rise to the claims occurred in this district.

## Factual Allegations

### A.  NuVasive's Business.

7.      NuVasive is an innovative, market-leading, medical device company focused on the design, development, and marketing of products for the surgical treatment of diseases of the spine.

8.      NuVasive's industry is highly competitive.  Industry participants typically require their sales personnel – be they employees or independent contractors – to agree to post-

2

employment covenants which restrict their ability to compete with their former employers for a set amount of time.

9. NuVasive markets its surgical products through its exclusive sales force which consists of directly-employed personnel and exclusive sales agents. NuVasive invests substantial funds into providing this sales force with extraordinary, specialized, comprehensive, and industry-leading training. This training supplies NuVasive's sales force with a deep understanding of NuVasive's products, methodology, trade secrets, and other valuable confidential or proprietary information.

10. NuVasive invests significant time, money, and resources into its sales force so that they are able to favorably represent the company and create goodwill with potential and existing NuVasive customers. This goodwill, arising from the substantial customer relationships developed between NuVasive's sales personnel and its customers, belongs to NuVasive as it is the product of NuVasive's significant investment.

**B. Jones and InoSpine enter into an Independent Contractor Agreement.**

11. InoSpine is a North Carolina-based exclusive sales agent of NuVasive's products.

12. Like all NuVasive exclusive distributors, InoSpine (and its employees and independent contractors) has access to NuVasive's extraordinary, industry-leading training; has access to and knowledge of NuVasive's trade secrets and other proprietary information; and is the face of NuVasive to customers within its sales territory. Accordingly, to protect its legitimate business interests, NuVasive required that InoSpine (and its employees and independent contractors) agree to certain reasonable confidentiality, non-competition, and non-solicitation obligations as a condition of NuVasive allowing InoSpine to sell its products.

13. On or about February 1, 2014, Jones became an Independent Contractor of InoSpine.

14.     As a condition of becoming an InoSpine independent contractor, Jones entered into the Independent Contractor Agreement which became effective as of February 1, 2014, and is attached as **Exhibit A**.

15.     Jones' duties under the Independent Contractor Agreement included, "without limitation, promoting and selling products offered by [InoSpine], including sales support functions, providing services to healthcare providers to whom such products are sold, and such other duties as may be assigned by [InoSpine] from time-to-time."

16.     Paragraph 1(E) of Jones' Independent Contractor Agreement provides:

> Exclusivity.  During the term of this Agreement, Contractor shall not be employed by or serve as an independent contractor to any other person or entity without the prior written approval of [InoSpine], to ensure that said employment will not negatively impact [InoSpine's] business interest and reputation.

17.     Paragraph 6(A)(1) of Jones' Independent Contractor Agreement provides him or InoSpine with the ability to terminate the Agreement without cause so long as they give "the other party not less than thirty (30) days prior written notice of such termination."

18.     Paragraph 8 of Jones' Independent Contractor Agreement – which is governed by North Carolina law – imposes reasonable non-competition obligations on him, stating in relevant part:

> During the term of this Agreement and for a period of one (1) year following Contractor's last day of employment, Contractor will not compete with [InoSpine] in Contractor's Territory, as defined on Schedule A as it may be amended from time to time by [InoSpine], by:
>
> > (1) Selling and/or promoting any products that are competitive with any products sold and/or promoted by [InoSpine] on the last day of Contractor's employment and which Contractor sold and/or promoted while employed by [InoSpine].

19.     Jones' Territory under his Independent Contractor Agreement consisted of the following counties in North Carolina: Mecklenburg, Catawba, Haywood, Iredell, Cabarrus, Rowan, Gaston, Rutherford, Caldwell, and Burke.

20.     Paragraph 9 of the Independent Contractor Agreement imposes reasonable non-solicitation obligations on Jones, stating in relevant part:

> For a period of one (1) year following the last day of Contractor's employment, Contractor will not compete with [InoSpine] by, in a competitive capacity:
>
> (1) Soliciting or accepting business competitive to [InoSpine] from, or providing competing products and/or services to, any person or entity, from whom or which Contractor accepted business on behalf of [InoSpine] or to whom or which Contractor provided products and/or services on behalf of [InoSpine] during the one-year period preceding the last day of Contractor's employment; or
>
> (2) Soliciting or accepting competing business from or providing competing products and/or services to, any person or entity from whom or which Contractor personally solicited business on behalf of [InoSpine] during the three (3) month period immediately preceding the last day of Contractor's employment

21.     Paragraph 11 of the Independent Contractor Agreement prohibits Jones from utilizing InoSpine's and/or NuVasive's confidential information for any purpose other than marketing NuVasive's products.

22.     Paragraph 13 of the Independent Contractor Agreement contains Jones' agreements that: (a) InoSpine (and NuVasive) will suffer irreparable injury if he violates any of the Independent Contractor Agreement's restrictive covenants; (b) that any remedies at law will not sufficiently remedy such violations; and (c) that InoSpine (and NuVasive) "shall be entitled to injunctive relief against" him in the event of such violations.

23.     NuVasive is an express third-party beneficiary to Paragraphs 7 through 11 and 13 of the Independent Contractor Agreement.

**C.  Kormanis and InoSpine enter into an Employment Agreement.**

24.     On or about February 17, 2014, Kormanis became an employee of InoSpine in the

position of Spine Specialist and executed an Employment Agreement, a copy of which is attached

as **Exhibit B**, as a condition of his employment with InoSpine.

25.     Kormanis negotiated and specifically altered certain provisions of his Employment

Agreement.  Some of those provisions Kormanis altered are highlighted in yellow on Exhibit B.

26.     Paragraph 8 of Kormanis' Employment Agreement – which is governed by North

Carolina law – imposes reasonable non-competition obligations on Kormanis, stating in relevant

part:

> During the term of this Agreement and for a period of two (2) year [sic] following
> Employee's last day of employment, Employee will not compete with [InoSpine]
> in Employee's Territory, as defined on Schedule A as it may be amended from time
> to time by [InoSpine], by:
>
> > (1) Selling and/or promoting any products that are competitive with any
> > products sold and/or promoted by [InoSpine] on the last day of
> > Employee's employment and which Employee sold and/or promoted
> > while employed by [InoSpine].

27.     Kormanis' Territory under his Employment Agreement consisted of the following

counties in North Carolina: Guilford, Forsyth, Stokes, and Rockingham.

28.     Paragraph 9 of Kormanis' Employment Agreement imposes reasonable non-

solicitation obligations on Kormanis, stating in relevant part:

> For a period of two (2) years following the last day of Employee's employment,
> Employee will not compete with [InoSpine] within the Employee's Territory, by,
> in a competitive capacity:
>
> > (1) Soliciting or accepting business competitive to [InoSpine] from, or
> > providing competing products and/or services to, any person or entity,
> > from whom or which Employee accepted business on behalf of
> > [InoSpine] or to whom or which Employee provided products and/or
> > services on behalf of [InoSpine] during the one-year period preceding
> > the last day of Employee's employment; or

> (2) Soliciting or accepting competing business from or providing competing products and/or services to, any person or entity from whom or which Employee personally solicited business on behalf of [InoSpine] during the three (3) month period immediately preceding the last day of Employee's employment.

29.    NuVasive is an express third-party beneficiary to, among others, Paragraphs 8 and 9 of Kormanis' Employment Agreement.

30.    Paragraph 6(A)(1) of Kormanis' Employment Agreement provides him or InoSpine with the ability to terminate the Agreement without cause so long as they give "the other party not less than thirty (30) days prior written notice of such termination."

**D. Jones begins breaching the Independent Contractor Agreement long before he terminated his relationship with InoSpine.**

31.    NuVasive and InoSpine recently learned that, in violation of his Independent Contractor Agreement, Jones, upon information and belief, began selling competitive products manufactured and/or marketed by NuTech Medical in 2014 (the "Competitive Biologic Products") through QMI.

32.    Jones never notified InoSpine that he was selling the Competitive Biologic Products.

33.    The Competitive Biologic Products directly compete with biologic products manufactured and/or marketed by NuVasive.

34.    Upon information and belief, Jones continues to violate his Independent Contractor Agreement by continuing to sell the Competitive Biologic Products to surgeon-customers within his former InoSpine sales territory.

**E. Jones continued violating, and Kormanis began violating their respective agreements after terminating their relationships with InoSpine.**

35.     Kormanis and Jones terminated their employment and independent contractor relationships with InoSpine on March 3 and 6, 2018, respectively.  Both have indicated – through words and/or actions – that they do not intend to comply with their post-employment obligations to InoSpine and NuVasive.  Additionally, Jones' and Kormanis' departures without providing the requisite written notice has left NuVasive with insufficient sales personnel to fully service its business in InoSpine's sales territory.

36.     Kormanis resigned via an email sent March 4, 2018, to InoSpine's sole member stating only, "Please allow this correspondence to serve as my resignation effective 03/03/2018. Thank you for the opportunity to be apart [sic] of the team."

37.     Similarly, in a March 6, 2018, email to InoSpine's sole member, Jones stated:

Jarrett,

I appreciate the opportunity to work for you over the years.  However, I have decided to move on.  Please consider this my letter of resignation.

For any financial or contractual issues please contact Karen Wolter (cc'd).

Many Thanks,

Mike

38.     Subsequent to the correspondence detailed above, InoSpine's sole member requested the opportunity to conduct an exit interview with Jones and Kormanis.  Both declined and indicated they would not be covering any additional surgeries or procedures on InoSpine's behalf going forward in violation of the notice of termination provisions within their respective Agreements.

39.     In a March 6, 2018, voicemail to InoSpine's sole member, Jones states that Alphatec's president, Pat Miles, solicited him to leave InoSpine and join Alphatec Spine, Inc. –

one of NuVasive's competitors. Jones and Kormanis are now affiliated with Alphatec and, in violation of their non-competition and non-solicitation obligations, are promoting and/or selling Alphatec's competitive products within their former InoSpine territories.

40.    In fact, Kormanis' LinkedIn profile currently states that he is a "Team Leader" for ReAlign Spine operating in the "Greensboro/Winston-Salem, North Carolina Area." Of course, Greensboro and Winston-Salem lie within Kormanis' former InoSpine sales territory.

41.    ReAlign Spine is a North Carolina limited liability company formed on April 4, 2018. Stephanie Kormanis is identified as ReAlign Spine's registered agent. Upon information and belief, Stephanie Kormanis is Kormanis' spouse.

42.    On or about March 7, 2018, an InoSpine representative met with one of NuVasive's surgeon-customers in Kormanis' assigned sales territory. During the meeting, this surgeon-customer informed InoSpine that he knew Kormanis' defection to Alphatec was "happening for some time" and stated "I need to give Ken's stuff a try." Indeed, the hospital calendar where this surgeon operates continued to reflect that Kormanis was responsible for providing the products the surgeon would utilize for some time after the March 7, 2018, meeting.

43.    On March 12, 2018, the surgeon referenced in the preceding paragraph performed a lateral surgery using Alphatec's products. Even though this was within thirty (30) days of Jones' notice of terminating his employment, he and another former NuVasive sales representative, Ashley Warwick, supported the surgery.

44.    Jones continues to support surgeries in which this surgeon-customer utilizes Alphatec products promoted by Kormanis.

9

45.     Alphatec hosted an education lab for surgeons in the Charlotte area the week after Jones and Kormanis resigned from InoSpine.  Upon information and belief, Jones and Kormanis attended this lab along with many of their former NuVasive surgeon-customers.

### Count I – Injunctive Relief (Defendants)

46.     NuVasive incorporates the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

47.     Both Jones' Independent Contractor Agreement and Kormanis' Employment Agreement expressly recognize that irreparable injury will result in the event they violate any restrictive covenant or affirmative obligation in their respective agreements to which NuVasive is a third-party beneficiary.

48.     Jones and Kormanis further agreed that any remedy at law for the violation of their restrictive covenants is inadequate and NuVasive is entitled to seek injunctive relief against them.

49.     NuVasive has no plain, adequate, or speedy remedy at law, and will suffer significant, permanent, and irreparable harm if preliminary and permanent injunctions are not entered enjoining Jones and Kormanis from violating the non-competition and non-solicitation obligations they owe to NuVasive.

### Count II – Breach of Contract Pre-Termination (Jones)

50.     NuVasive incorporates the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

51.     Jones' Independent Contractor Agreement is a valid contract to which NuVasive is a third-party beneficiary.

52.     Jones breached the terms of his Independent Contractor Agreement by, without limitation, selling competitive products manufactured and/or marketed by NuTech Medical during the term of his Independent Contract Agreement.

53.     Such actions, as described above, also violate the implied covenants of good faith and fair dealing in the Independent Contractor Agreement.

54.     NuVasive incurred damages due to Jones' breach of his Independent Contractor Agreement.

### Count III – Breach of Contract Post-Termination (Jones)

55.     NuVasive incorporates the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

56.     Jones' Independent Contractor Agreement is a valid contract to which NuVasive is a third-party beneficiary.

57.     Jones has breached, and is breaching the terms of his Independent Contractor Agreement by, without limitation, promoting and/or selling the Competitive Biologic Products and/or Alphatec's competitive products within his former InoSpine territory after the termination of his relationship with InoSpine.

58.     Such actions, as described above, also violate the implied covenants of good faith and fair dealing in Jones' Independent Contractor Agreement.

59.     NuVasive has incurred, and continues to incur, damages due to Jones' breach of his Independent Contractor Agreement.

### Count IV – Breach of Contract at Termination (Defendants)

60.     NuVasive incorporates the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

11

61. Jones' Independent Contractor Agreement and Kormanis' Employment Agreement are valid contracts to which NuVasive is a third-party beneficiary.

62. Jones and Kormanis breached their respective Agreements by, without limitation, failing to provide the requisite thirty days' notice of any such termination.

63. Such actions also violate the implied covenants of good faith and fair dealing in Jones' Independent Contractor Agreement and Kormanis' Employment Agreement.

64. NuVasive has incurred, and continues to incur, damage due to Jones' and Kormanis' breach of their respective Agreements.

### Count V – Breach of Contract Post-Termination (Kormanis)

65. NuVasive incorporates the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

66. Kormanis' Employment Agreement is a valid contract to which NuVasive is a third-party beneficiary.

67. Kormanis has breached, and is breaching the terms of his Employment Agreement by, without limitation, promoting and/or selling Alphatec's competitive products within his former InoSpine territory after the termination of his employment with InoSpine.

68. Such actions, as described above, also violate the implied covenants of good faith and fair dealing in Kormanis' Employment Agreement.

69. NuVasive has incurred, and continues to incur, damages due to Kormanis' breach of his Employment Agreement.

### Count VI – Violation of North Carolina Unfair and Deceptive Trade Practices Act (Jones)

70. NuVasive incorporate the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

71.     North Carolina General Statutes § 75-1.1 makes unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce unlawful.

72.     Jones' promotion and sale of the Competitive Biologic Products during the term of his Independent Contractor Agreement, and other conduct described above, constitute unfair competition and/or unfair and deceptive trade practices affecting commerce.

73.     Jones willfully engaged in his unfair and deceptive acts by, without limitation, promoting and selling the Competitive Biologic Products and refused, without warrant, to fully resolve this matter.

74.     NuVasive was injured and has incurred damages due to Jones' unfair competition and/or unfair and deceptive trade practices.

## Prayer for Relief

WHEREFORE, NuVasive respectfully requests that this Court:

A.      Issue preliminary and permanent injunctions which require Jones and Kormanis to comply with all of the contractual obligations they owe to NuVasive;

B.      Enter a judgment against Jones and Kormanis awarding damages for their respective breaches of the Independent Contractor Agreement and Employment Agreement;

C.      Enter a judgment against Jones awarding damages for his violations of the North Carolina Unfair and Deceptive Trade Practices Act, trebling those damages where appropriate;

D.      Award NuVasive the reasonable costs, including attorneys' fees, it incurs in obtaining the requested relief; and

E.      Grant any other further and general relief it deems just and proper.

Respectfully submitted,


By:      **s/ Paul A. Capua**
Paul A. Capua / N.C. State Bar No. 40239
Genevieve A. Mente / N.C. State Bar No. 41887
*Attorneys Plaintiff NuVasive, Inc.*
CAPUA LAW FIRM, PA
164 South Depot Street
Boone, NC 28607
Telephone: (828) 264-0260
Fax: (828) 378-0236
E-mail: pcapua@capualawfirm.com
E-mail: gmente@capualawfirm.com


Christopher W. Cardwell, Esq. (*pro hac vice* forthcoming) (Tennessee Bar No. 19751)
M. Thomas McFarland, Esq. (*pro hac vice* forthcoming) (Tennessee Bar No. 033432)
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Plaintiff NuVasive, Inc.*

14

Exhibit A

## INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement ("Agreement"), is entered into this 1 day of February, 2014 by and between inoSpine, LLC A North Carolina Limited Liability Company authorized to do business, and doing business, in North Carolina ("Employer"); and Michael Jones, an Independent Sales Contractor doing business in North Carolina ("Contractor").

WHEREAS, Employer is engaged in the sale of orthopedic, neurosurgical, spinal and other medical products; and

WHEREAS, Contractor will act for Employer in maintaining, improving, developing, and servicing Employer's vendors, customers and referral sources, and both parties to the Agreement have recognized and do recognize that Contractor will be employed in a position of trust and confidence in which a high, fiduciary duty of loyalty on the part of Contractor to Employer is created; and

WHEREAS, it is anticipated that, in the performance of his duties, Contractor will come in contact with Employer's customers, referral sources, vendors and certain proprietary and confidential information which has significant economic value, is not readily available to the public, which is of great importance to Employer in dealing with its clientele, and which is carefully protected by Employer as secret and confidential information.

WHEREAS, Employer wishes to hire Contractor, and Contractor wishes to perform servies for Employer, upon and subject to the terms and conditions set forth herein; and

NOW, THEREFORE, in consideration of the Employer's employment of Contractor (which includes compensation paid for services performed in the course of such employment), and Contractor's access to Employer's confidential information and customers, along with other good and valuable consideration, the receipt and sufficiency of which each party acknowledges, the parties agree as follows:

1. **Employment.**

   A.     Employment/Territory.   Employer hereby agrees to hire Contractor "at will," and Contractor hereby accepts employment with Employer, to engage in the sale of orthopedic, spinal and other medical products for and on behalf of Employer, in the cities and/or counties listed on Schedule A (as it may be amended from time to time by Employer with thirty (30) days' notice to Contractor) attached hereto and incorporated by reference herein ("Contractor's Territory").   Contractor agrees to devote all necessary professional time, skill labor and attention to the sale of the aforementioned products in Contractor's Territory, together with such administrative and other duties as Employer may require (reasonable periods of illness excepted).   Contractor further agrees that in all such aspects of such work, Contractor shall comply with the policies, standards, regulations of the Employer from time to time established, and shall perform the duties assigned faithfully, intelligently, to the best of his/her/ability, and in the best interest of the Employer.

   B.     Contractor Warranties.   As a condition of Employer's willingness to employ Contractor, Contractor represents and warrants to Employer:

          (1)    That accepting employment or continuing employment with Employer shall not breach any contract or violate any covenant or other duty between Contractor and any third party;

          (2)    That there are no pending or threatened claims of breach of contract against Contractor and, to the best of Contractor's knowledge, no events or conduct that may give rise to such a claim;

          (3)    That Contractor is familiar with, and will comply with all applicable federal, state and local laws, regulations and ordinances, including, without limitation, (a) the Social Security Act; (b) HIPAA, (c) all federal and state health care anti-fraud, anti-kickback and abuse laws; and (d) all rules and regulations of the FDA and the Center for Medicare and Medicaid Services (CMS).  Without limiting the generality of the foregoing, except to the extent allowed by applicable law, Contractor will make no offer, payment or other inducement, whether directly or indirectly, to induce the referral of business, the purchase, lease or order of any item or service, or the recommending of the purchase, lease or order of any item or service.  Contractor will comply with all operating and compliance policies of Employer and Employer's manufacturers and suppliers (including but not limited to the Code of Conduct, Code of Ethics, and Insider Trading Policy of NuVasive, Inc., copies of which have been provided to Contractor), as such policies may be updated from time to time;

          (4)    That Contractor's performance under this Agreement and the terms of Contractor's employment with Employer does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by Contractor in confidence or in trust prior to Contractor's employment with Employer, and Contractor agrees not to disclose to Employer or NuVasive, Inc. any confidential or proprietary information or material belonging to any previous employers or other entities to whom Contractor has provided services; and.

          (5)    That Contractor does not currently represent or promote, directly or indirectly, within a fifty (50) mile radius of the city or county limits of any city or county in which Contractor expects to perform sales duties on behalf of Employer, any products (i) that are competitive with products sold by Employer or (ii) for use in spine surgery that are not marketed, promoted or sold by NuVasive, Inc.

          C.    <u>Indemnification</u>. If any third party asserts or threatens to assert a claim against Employer which, if true, would render any of the foregoing representations false or would establish that Contractor has breached any of the foregoing warranties, Contractor shall immediately defend, indemnify and hold harmless Employer from and against any and all such claims including, without limitation, all costs, damages, and expenses, including attorneys' fees, related thereto and, upon written demand by Employer, shall defend Employer against all such claims at Contractor's sole expense.

          D.    <u>Duties</u>. Contractor's duties shall include, without limitation, promoting and selling products offered by Employer, including sales support functions, providing services to healthcare providers to whom such products are sold, and such other duties as may be assigned by Employer from time-to-time.

2

       E.    <u>Exclusivity</u>. During the term of this Agreement, Contractor shall not be employed by or serve as an independent contractor to any other person or entity without the prior written approval of Employer, to ensure that said employment will not negatively impact Employer's business interest and reputation.

       2.    **Term**. The term of Contractor's employment under this Agreement shall begin the 1 day of February, 2014, and shall continue thereafter, unless terminated as provided in <u>Paragraph 6</u>. herein.

       3.    **Compensation and Expenses**. As compensation while employed hereunder, Contractor shall be entitled to compensation from Employer as set forth in Schedule B, attached hereto and made a part hereof. Such compensation may be changed from time to time as provided for on Schedule B. Contractor will also be reimbursed for all properly documented necessary and reasonable business expenses, as determined by Employer, incurred by him in connection with his services here under. However, compensation paid pursuant to this Agreement shall not be subject to the customary withholding of income taxes and other employment taxes. Contractor shall be solely responsible for reporting and paying any such taxes. Employer shall not provide Contractor with any coverage or participation in the Employer's accident and health insurance, life insurance, disability income insurance, medical expense reimbursement, wage continuation plans, or other fringe benefits provided to regular employees.

       4.    **Independent Contractor Status.** Contractor acknowledges that he/she is an independent contractor and is not an agent, partner, joint venturer nor employee of Employer. Contractor shall have no authority to bind or otherwise obligate Employer in any manner nor shall Contractor represent to anyone that he/she has a right to do so. Contractor further agrees that in the event Employer suffers any loss or damage as a result of a violation of this provision, Contractor shall indemnify and hold harmless the Employer from any such loss or damage.

       5.    **Assignment.** Contractor shall not assign any of his/her rights under this Agreement or delegate the performance of any of his/her duties hereunder, without the prior written consent of the Employer.

       6.    **Termination.**

       A.    Notwithstanding the Term of this Agreement, this Agreement shall be deemed to be terminated and the business relationship between Contractor and Employer shall be deemed severed upon the occurrence of either of the following:

       (1)    <u>Termination Without Cause</u> Either Contractor or Employer may terminate Contractor's employment hereunder at any time, without cause, by giving the other party not less than thirty (30) days prior written notice of such termination. Employer reserves the right to require Contractor not to work during the notice period. However, if Employer has terminated Contractor's employment by giving thirty (30) days' notice pursuant to this subpart 6A(1), Employer shall be obligated to pay Contractor a pro rata part of one half (1/12) of the average commission earned by Contractor over the twelve-month period preceding the last day

3

of Contractor's employment for any part of the notice period not worked by Contractor and any commissions or incentive bonuses earned as of the last day of employment.

(2)     <u>Termination With Cause</u>.  Employer shall have the right to terminate Contractor's employment hereunder at any time with "Cause" (as defined herein) upon written notice to Contractor to such effect, with such termination effective immediately upon delivery of such notice to Contractor.   For purposes of this Agreement, "Cause" shall mean:  (i) fraud or material misappropriation by Contractor with respect to the business or assets of Employer; (ii) Contractor's continued non-performance of Contractor's duties after having received notice from Employer specifying the act or acts alleged to constitute the non-performance; (iii) Contractor's gross negligence or recklessness; (iv) conduct that constitutes disloyalty to Employer, or that materially harms or has the potential to cause material harm to Employer; (v) the conviction of Contractor of a felony or of any crime involving moral turpitude under state or federal law; (vi) the use, possession or sale of illegal drugs or controlled substances by Contractor; (vii) a breach by Contractor of Contractor's representations, warranties, or obligations under <u>Paragraphs 1B, 7, 8, or 9</u> of this Agreement; or (viii) a determination by Employer that Contractor acted in a discriminatory or retaliatory manner toward any employee or other independent contractor of Employers, or that Contractor has violated Employer's harassment policy, or committed any employment-related tort.

B.     <u>Payment of Commissions Due</u>.  Upon the termination of Contractor's employment and this Agreement pursuant to <u>Paragraph 6.A.</u>, above, Contractor shall be entitled to receive Contractor's commissions earned through the last day of Contractor's employment, payable in full within forty-five (45) days after the last day of Contractor's employment.  Employer shall have no further liability to Contractor except as specifically outlined in this Agreement.

C.     <u>Survival of Terms</u>.   Notwithstanding the termination of Contractor's employment and this Agreement, Employer shall have the right to enforce all terms and conditions in this Agreement, including but not limited to <u>Paragraph 7 (Employer's Records), Paragraph 8 (Non-Competition), Paragraph 9 (Non-Solicitation), Paragraph 10 (NuVasive, Inc.), Paragraph 11(Confidential Information Disclosure Prohibition), Paragraph 12 (Handling of Confidential Information) and Paragraph 13 (Injunctive Relief)</u>, which terms and conditions shall survive the termination of this Agreement and Contractor's employment hereunder and shall remain in full force and effect; furthermore, the parties shall be required to carry out any provisions of this Agreement which contemplate performance by them subsequent to such termination.

7.     **Employer's Records**.   Contractor understands and agrees that all records, materials and information relating to Employer's business, whether in possession of Employer or Contractor, are the exclusive property of Employer.   Upon the last day of Contractor's employment, Contractor shall immediately and without demand return to Employer all such records, materials and information, and all copies thereof, in whatever form, in Contractor's possession and immediately thereafter Contractor shall have no further right of access to or any right to obtain any of such records and materials or copies thereof, or any information contained therein, except as may be required by law and then only at the sole cost and expense of Contractor.

4

8.    **Non-Competition**.    Contractor acknowledges that during Contractor's employment Contractor will acquire confidential information about Employer's business, including but not limited to, its customers, manufacturers, suppliers and other proprietary, confidential information and/or that Contractor may be responsible for contacting and developing relationships with Employer's customers.  In order to protect Employer's critical interest in these relationships and information, Contractor covenants and agrees as follows:

A.    During the term of this Agreement and for a period of one (1) year following Contractor's last day of employment, Contractor will not compete with Employer in Contractor's Territory, as defined on Schedule A as it may be amended from time to time by Employer, by:

(1)    Selling and/or promoting any products that are competitive with any products sold and/or promoted by Employer on the last day of Contractor's employment and which Contractor sold and/or promoted while employed by Employer; or

(2)    Providing competing services directly to or on behalf of NuVasive, Inc., or by being employed in a competitive capacity by NuVasive, Inc.

B.    Contractor agrees that competition shall include engaging in competitive activity as set forth in Paragraph 8(A) above, whether on his own behalf, or as a director, shareholder, officer, partner, or joint venturer with any other person or entity, or as an Contractor, agent, or representative of any other person or entity.  Notwithstanding the foregoing, ownership of five (5%) percent or less of any class of securities of an entity shall not constitute competition against Employer.

C.    If any provision of this Paragraph 8 relating to the time period, geographic area or scope of the restrictive covenants shall be declared by a court of competent jurisdiction to exceed the maximum time period, geographic area or scope, as applicable, that such court deems reasonable and enforceable, said time period, geographic area or scope shall be deemed to be, and thereafter shall become, the maximum time period, scope or largest geographic area that such court deems reasonable and enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

9.    **Non-Solicitation**.    In addition to the covenant not to compete set forth in Paragraph 8 above, Contractor further covenants and agrees as follows:

A.    For a period of one (1) year following the last day of Contractor's employment, Contractor will not compete with Employer by, in a competitive capacity:

(1)    Soliciting or accepting business competitive to Employer from, or providing competing products and/or services to, any person or entity, from whom or which Contractor accepted business on behalf of Employer or to whom or which Contractor provided products and/or services on behalf of Employer during the one-year period preceding the last day of Contractor's employment; or

(2)    Soliciting or accepting competing business from or providing competing products and/or services to, any person or entity from whom or which Contractor

5

personally solicited business on behalf of Employer during the three (3) month period immediately preceding the last day of Contractor's employment.

B.      It is the specific intent of the parties that Contractor shall be restricted from soliciting or accepting competing business regarding the same or similar products and/or services as Contractor sold or provided while employed by Employer or products or services that compete with the products and/or services as Contractor sold and/or provided while employed by Employer.

C.      If any provision of this <u>Paragraph 9</u> relating to the time period or scope of the restrictive covenants shall be declared by a court of competent jurisdiction to exceed the maximum time period or scope, as applicable, that such court deems reasonable and enforceable, said time period or scope shall be deemed to be, and thereafter shall become, the maximum time period or greatest scope that such court deems reasonable and enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

D.      <u>Covenant Not to Solicit or Hire Employer's Contractors</u>.   Contractor agrees that during Contractor's employment with Employer and for a period of one (1) year following the last day of Contractor's employment, Contractor shall not, directly or indirectly, solicit or induce, or attempt to solicit or induce, any individual employed by Employer at any time during the three-month period preceding Contractor's last day of employment to leave Employer for any reason whatsoever or employ or otherwise hire any such Contractor for any reason whatsoever for Contractor's or another's account.

E.      <u>Covenant Not to Solicit Manufacturers</u>.   Contractor further covenants and agrees that Contractor will not enter into any agreement with any manufacturer or supplier of Employer that supplied products for sale and/or promotion to Employer during the one-year period prior to Contractor's last day of employment (including NuVasive, Inc.), to sell and/or promote any products either sold by Contractor on behalf of Employer or products competing with any products sold by Contractor on behalf of Employer, other than as an Contractor of Employer, within a fifty (50) mile radius of the city or county limits of any city or county in which Employer engaged in sales/promotion or management activities within the one-year period prior to Contractor's last day of employment.

10.      **NuVasive, Inc**.   The parties understand and agree the Employer is a distributor of products manufactured and/or marketed by NuVasive, Inc. and that NuVasive, Inc. has a substantial, legitimate business interest in protecting its customer, employment, and other business relationships.   The parties further understand and agree that NuVasive, Inc., and its successors and assigns, are intended to be and hereby are third party beneficiaries of this Agreement with full contractual and other rights to directly enforce the provisions set forth in <u>Paragraphs 7, 8, 9, 10, 11, and 13</u> herein.

11.      **<u>Confidential Information Disclosure Prohibition</u>.**   Contractor acknowledges that, in the course of performing Contractor's duties, Contractor shall become acquainted and entrusted with certain confidential information and/or proprietary information of Employer and NuVasive, Inc., including, but not limited to, customer lists and information, financial data,

referral source information, product information and marketing programs (the "Confidential Information"). Contractor agrees to treat all Confidential Information entrusted to Contractor as fiduciary, and accepts and undertakes all the obligations of a fiduciary, including good faith, trust, confidence and candor, to maintain protect and develop Confidential Information for the benefit of the Company. Contractor will not cause or allow such Confidential Information to be exposed to unauthorized persons and that Contractor will not, without the prior written consent of Employer or NuVasive, Inc., as applicable, disclose, divulge, or make any use of such Confidential Information during Contractor's employment or at any time after the last day of Contractor's employment, except as directed by Employer in connection with Contractor's duties pursuant to this Agreement and as may be required by law. Contractor further agrees to notify Employer or NuVasive, Inc., as applicable, immediately of any third party whom Contractor knows or discovers to be in possession of such Confidential Information.

12.   **Handling of Confidential Information.**

A.   Customer List. Contractor shall, at the time of and during employment furnish a complete list of all of the correct names and places of businesses of all its customers, immediately notify Employer of the name and address of any new customer and report all changes in location of old customers so that upon the termination of employment, Employer will have a complete list of the correct names and addresses of customers with whom Contractor had dealt.

B.   Development of Intellectual Property. Contractor may make, discover or develop inventions, ideas, trade secrets, financial materials, computer programs, discoveries, developmental improvements, know how, processes and devices related to or used in the conduct of Contractor's performance of services for an on behalf of Employer ("Developments") Contractor agrees to disclose fully and promptly to Employer any of said Developments. Further, Contractor agrees that Employer is the sole and exclusive owner of said Developments; the Contractor retains no ownership in said Developments; and said Developments become part of the Employer's Confidential Information for purposes of this Agreement. Employer and Contractor agree that if the Developments or any portion thereof are copyrightable, it shall be deemed "work for hire" as such term is defined in the U.S. Copyright Act. Contractor shall execute and deliver to Employer any and all licenses, applications, assignments and other documents and take any and all actions that Employer may deem necessary or desirable to protect Employer rights in said Developments.

13.   **Injunctive Relief.**

A.   Employer and Contractor agree that irreparable injury will result to Employer in the event Contractor violates any restrictive covenant or affirmative obligation contained in Paragraphs 7, 8, 9, 10, 11, and 12 of this Agreement, and Contractor acknowledges that the remedies at law for any breach by Contractor of such provisions will be inadequate and that Employer shall be entitled to injunctive relief against Contractor, in addition to any other remedy that is available, at law or in equity.

B.   Contractor agrees that the non-competition, non-disclosure, and non-solicitation obligations contained herein shall be extended by the length of time which

Contractor shall have been in breach of any of said provisions.  Accordingly, Contractor recognizes that the time periods included in the restrictive covenants contained herein shall begin on the date a court of competent jurisdiction enters an order enjoining Contractor from violating such provisions unless good cause can be shown as to why the periods described should not begin at that time.

14.     **Indemnity**.     Contractor shall indemnify and hold harmless Employer, its successors and assigns, from and against any and all liabilities, costs, damages, expenses and attorneys' fees resulting from or attributable to any and all negligent or intentional acts and omissions of Contractor; provided, however, that to the extent that any such liabilities, costs, damages, expenses and attorneys' fees are covered by insurance maintained by Employer, Contractor shall be required to reimburse Employer only for any uncovered loss or damages Employer incurs including, without limitation, any deductible charged to Employer.

15.     **Termination of Prior Agreements**.  This Agreement constitutes the entire agreement between the parties and supersedes all prior or contemporaneous agreements, representations and understandings of every kind between the parties hereto, all of which are hereby terminated.

16.     **Effect of Agreement.**  This Agreement shall be binding on and inure to the respective benefit of Contractor and his personal representatives and Employer and its successors and assigns.

17.     **Modification**.  No provision of this Agreement, including the provisions of this paragraph, may be modified, deleted or amended in any manner except by an agreement in writing executed by the parties hereto.

18.     **Succession and Assignment**.    The obligations of Contractor under this Agreement shall continue after the last day of Contractor's employment and shall be binding on Contractor's heirs, executors, legal representatives and assigns.  Such obligations shall inure to the benefit of any successors or assigns of Employer.  Contractor specifically acknowledges that in the event of a sale of all or substantially all of the assets of Employer, or any other event or transaction resulting in a change of ownership or control of Employer's business, the rights and obligations of the parties hereunder shall inure to the benefit of any transferee, purchaser, or future owner of Employer's business.  This Agreement may be assigned only by Employer.

19.     **Interpretation**.  If any part of any covenant or provision contained in this Agreement is determined by a court of competent jurisdiction to be invalid, illegal, overbroad, or incapable of being enforced, then the court so deciding shall interpret such provision(s) in a manner so as to enforce them to the fullest extent of the law.  In particular, the parties expressly agree that any court may deem "Contractor's Territory" to mean the broadest territory described in Schedule A that is legally enforceable.

20.     **Severability.**  Each of the paragraphs and subsections contained in this Agreement shall be enforceable independently of every other paragraph and subsection in this Agreement, and the invalidity or non-enforceability of any paragraph or subsection shall not invalidate or render nonenforceable any other paragraph or subsection contained herein.  If any paragraph or subsection is found invalid or unenforceable, it is the intent of the parties that a

court of competent jurisdiction shall reform the paragraph or subsection to produce its nearest enforceable economic equivalent. Without limiting the foregoing, in the event the restrictions on competition or solicitation as set forth in <u>Paragraphs 8 or 9</u> are determined to be invalid, overbroad, or unenforceable, the parties expressly agree that the provisions in these Paragraphs shall be deemed severable, and the invalidity or unenforceability of any provision (or part thereof) shall in no way effect the validity or enforceability of any other provision (or remaining part thereof).

21.     **<u>Restrictive Covenants of the Essence</u>**.   The restrictive covenants upon the Contractor set forth herein are of the essence of this Agreement; they shall be construed as independent of any other provision in this Agreement. The existence of any claim or cause of action of the Contractor against Employer, whether predicated on this Agreement or not, shall not constitute a defense to the enforcement by Employer of the restrictive covenants contained herein.   Contractor acknowledges and agrees that the restrictive covenants are reasonably necessary for the protection of Employer and that such restrictive covenants are reasonably limited with respect to the activities prohibited, the duration thereof, the geographical area thereof, the scope thereof and the effect on Contractor and the general public. Contractor further acknowledges and agrees that the purpose and effect of such restrictive covenants is solely to protect Employer for a limited period of time from unfair competition by Contractor, and that the initiation of employment of Contractor as described in this Agreement is conditioned upon Contractor agreeing to abide by and be bound by all of the restrictive covenants and provisions contained in this Agreement.

22.     **<u>Attorneys Fees</u>.**  In the event  Employer is caused to injunctive or any other form of equitable relief and is successful in its attempts, and/or Employer is caused to file a lawsuit in order to enforce the terms of this Agreement and Employer obtains a final judgment from a court of competent jurisdiction pursuant to which Contractor is determined to have breached his/her obligations under this Agreement, Employer shall  be entitled to recover, in addition to any award of damages, its reasonable attorneys fees, costs, and expenses incurred in obtaining such equitable relief and/or final judgment.  The parties agree that the provision of this paragraph are reasonable and necessary.

23.     **<u>Applicable Law</u>.**   Questions with respect to the construction, performance, and enforceability of this Agreement and the rights and liabilities of the parties hereunder shall be determined in accordance with the laws of the State of North Carolina, without regard to its conflict of laws provisions.  The parties hereto submit to the jurisdiction of the courts of North Carolina with respect to this Agreement and all matters arising hereunder, and they agree that the venue for resolution of any dispute arising hereunder shall be the appropriate state or federal courts within North Carolina.

24.     **<u>Notice</u>**.  All notices, requests, demands, and other communications required or that may be given hereunder shall be in writing and shall be deemed to have been duly given when received, if delivered in person, or sent by certified mail, postage prepaid, return receipt requested or sent by nationally recognized overnight courier service, and addressed to the last known address of the parties hereto.

25.     **No Waiver.**   The failure of either party to this Agreement to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms and conditions of this Agreement, shall not be construed as subsequently waiving any such terms and conditions, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

26.     **Original Copies.**   This Agreement may be executed in more than one counterpart, each of which shall be deemed an original.

27.     **Headings.**   The underlined headings herein are for convenience of reference only and shall not affect the interpretation of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

EMPLOYER:

InoSpine, LLC

By: _____
       Jarrett Clay, Member/Manager

CONTRACTOR:

By: _____
       Michael Jones

10

## SCHEDULE A
## CONTRACTOR'S TERRITORY

   A.  Contractor shall perform duties in the following listed cities and/or counties (as may be amended from time to time), in North Carolina and such other cities and/or counties in North Carolina as Contractor may be assigned, or may actually perform duties, during the term of this Agreement or Contractor's employment with Employer ("Contractor's Territory"):

Counties:

Mecklenburg
Catawba
Haywood
Iredell
Cabarrus
Rowan
Gaston
Rutherford
Caldwell
Burke

## SCHEDULE B (COMMISSION)

Contractor shall be compensated on a pure commission basis.  Employer shall determine the commission rate for each pay period, and said determination shall be in the sole and absolute discretion of Employer.

12

Exhibit B

# EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement"), is entered into this 17th day
 February, 2014 by and between inoSpine, LLC A North Carolina Limited Liability Company
authorized to do business, and doing business, in North Carolina ("Employer"); and
 Kenneth Kormanis_____, a resident of North Carolina ("Employee").

WHEREAS, Employer is engaged in the sale of orthopedic, neurosurgical, spinal and
other medical products; and

WHEREAS, Employee is being employed as a **Spine Specialist**_____; and

WHEREAS, Employee will act for Employer in maintaining, improving, developing, and
servicing Employer's vendors, customers and referral sources, and both parties to the Agreement
have recognized and do recognize that Employee will be employed in a position of trust and
confidence in which a high, fiduciary duty of loyalty on the part of Employee to Employer is
created; and

WHEREAS, Employer's personnel develop and come in contact with Employer's
customers, referral sources, vendors and certain proprietary and confidential information which
has significant economic value, is not readily available to the public, which is of great
importance to Employer in dealing with its clientele, and which is carefully protected by
Employer as secret and confidential information.

WHEREAS, Employer wishes to employ Employee, and Employee wishes to be
employed by Employer, upon and subject to the terms and conditions set forth herein; and

NOW, THEREFORE, in consideration of the Employer's employment of Employee
(which includes compensation paid for services performed in the course of such employment),
and Employee's access to Employer's confidential information and customers, along with other
good and valuable consideration, the receipt and sufficiency of which each party acknowledges,
the parties agree as follows:

1.     **Employment.**

    A.    <u>Employment/Territory</u>. Employer hereby agrees to employ Employee as
an "at will" employee, and Employee hereby accepts employment with Employer, to engage in
the sale of orthopedic, spinal and other medical products for and on behalf of Employer, in the
cities and/or counties listed on <u>Schedule A</u> (as it may be amended from time to time upon
mutual agreement of the parties) attached hereto and incorporated by reference herein
("Employee's Territory"). Employee agrees to devote Employee's entire professional time,
skill, labor and attention to the sale of the aforementioned products in Employee's Territory,
together with such administrative and other duties as Employer may require.

    B.    <u>Employee Warranties</u>. As a condition of Employer's willingness to
employ Employee, Employee represents and warrants to Employer:

(1)     That accepting employment or continuing employment with Employer shall not breach any contract or violate any covenant or other duty between Employee and any third party, provided that Employer acknowledges that it is aware that Employee is under an agreement that restricts Employee's ability to provide certain services on behalf of Employer in western areas of the state of North Carolina;

(2)     That there are no pending or threatened claims of breach of contract against Employee and, to the best of Employee's knowledge, no events or conduct that may give rise to such a claim;

(3)     That Employee is familiar with, and will comply with all applicable federal, state and local laws, regulations and ordinances, including, without limitation, (a) the Social Security Act; (b) HIPAA, (c) all federal and state health care anti-fraud, anti-kickback and abuse laws; and (d) all rules and regulations of the FDA and the Center for Medicare and Medicaid Services (CMS). Without limiting the generality of the foregoing, except to the extent allowed by applicable law, Employee will make no offer, payment or other inducement, whether directly or indirectly, to induce the referral of business, the purchase, lease or order of any item or service, or the recommending of the purchase, lease or order of any item or service. Employee will comply with all operating and compliance policies of Employer and Employer's manufacturers and suppliers (including but not limited to the Code of Conduct, Code of Ethics, and Insider Trading Policy of NuVasive, Inc., starting after such time as Employee has been provided copies of such policies and a reasonable time to review them), as such policies may be updated from time to time;

(4)     That Employee's performance under this Agreement and the terms of Employee's employment with Employer does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by Employee in confidence or in trust prior to Employee's employment with Employer, and Employee agrees not to disclose to Employer or NuVasive, Inc. any confidential or proprietary information or material belonging to any previous employers or other entities to whom Employee has provided services; and.

(5)     That, except as set forth below, Employee does not currently represent or promote, directly or indirectly, within a fifty (50) mile radius of the city or county limits of any city or county in which Employee expects to perform sales duties on behalf of Employer, any products (i) that are  competitive with products sold by Employer or (ii) for use in spine surgery that are not marketed,  promoted or sold by NuVasive, Inc. Employer acknowledges that it is aware of certain meetings that Employee has had within the foregoing area and that Employee has informed Employer in writing that such meetings did not lead to any sales for the products that were discussed during such meetings.

C.     Indemnification. If any third party asserts or threatens to assert a claim against Employer which, if true, would render any of the foregoing representations false or would establish that Employee has breached any of the foregoing warranties, Employee shall immediately defend, indemnify and hold harmless Employer from and against any and all such claims including, without limitation, all costs, damages, and expenses, including attorneys' fees, related thereto and, upon written demand by Employer, shall defend Employer against all such claims at Employee's sole expense.

D.     Duties. Employee's duties shall include, without limitation, promoting and

2

selling products offered by Employer, including sales support functions, providing services to healthcare providers to whom such products are sold, and such other duties as may be assigned by Employer from time-to-time.  Employee hereby acknowledges and agrees that Employee's

3

duties under this Agreement shall be performed at the reasonable direction and under reasonable supervision of Employer.

E. <u>Exclusivity</u>. During the term of this Agreement, Employee shall not be employed by or serve as an independent contractor to any other person or entity without the prior written consent of Employer.

2. **Term**. The term of Employee's employment under this Agreement shall begin the 17__day of February, 2014 , and shall continue thereafter, unless terminated as provided in <u>Section 6</u>. herein.

3. **Compensation and Expenses**.  As compensation while employed hereunder, Employee, during the satisfactory performance of Employee's duties and obligations, shall be entitled to compensation from Employer as set forth in Schedule B, attached hereto and made a part hereof. Such compensation may be changed from time to time as  provided  for  on Schedule B. Employee will also be reimbursed for all  properly documented necessary and reasonable business expenses, as determined by Employer, incurred by him in connection with his services here under.

4. **Annual Leave**.   During each period of twelve (12) calendar months in the term of this Agreement, Employee shall be entitled to annual leave of ten (10) working days (or pro rata for any portion of such year during which termination of employment shall occur), without loss of pay. The scheduling of all vacations that would otherwise impact Employee's availability during Employee's normally scheduled work-week must be approved in writing by Employer. The foregoing annual leave shall be noncumulative, and any unused leave shall not be carried over to the next year and shall not be paid to Employee on the last day of Employee's employment. Employee shall not be entitled to receive any additional compensation from Employer on  account of Employee's failure to use or take any of Employee's annual leave.

5. **Sick Leave**.   During each period of twelve (12) calendar months in the term of this Agreement, Employee shall be entitled to sick leave of six (6) working days (or pro rata for any portion of such year during which the last day of employment shall occur), without loss of pay. The foregoing sick leave shall be noncumulative, and any unused leave shall not be carried over to the next employment year and upon the last day of Employee's employment shall not be paid out to Employee. Employee shall not be entitled to receive any additional compensation for sick days not used during such twelve (12) month period.

6. **Termination**.

A. Notwithstanding the Term of this Agreement, this Agreement shall be deemed to be terminated and the employment relationship between Employee and Employer shall be deemed severed upon the occurrence of either of the following:

(1) <u>Termination Without Cause</u> Either Employee or Employer may terminate Employee's employment hereunder at any time, without cause, by giving the other party not less than thirty (30) days prior written notice of such termination. Employer reserves the right to require Employee not to work during the notice period. However, if Employer has terminated Employee's employment by giving thirty (30) days' notice pursuant to this subpart

4

6A(1), Employer shall be obligated to pay Employee a

5

pro rata part of 1/12 of the average commission earned by Employee over the twelve-month period preceding the last day of Employee's employment for any part of the notice period not worked by Employee and any commissions or incentive bonuses earned as of the last day of employment. In the event that Employee has been employed less than twelve (12) months, Employer will pay to Employee an amount equal to Employee's average monthly commission over the number of full months that Employee has been employed by Employer and any commissions or incentive bonuses earned as of the last day of employment.

(2)     Termination With Cause.  Employer shall have the right to terminate Employee's employment hereunder at any time with "Cause" (as defined herein) immediately upon written notice to Employee to such effect, with such termination effective immediately upon delivery of such notice to Employee. For purposes of this Agreement, "Cause" shall mean: (i) fraud or material misappropriation by Employee with respect to the business or assets of Employer; (ii) Employee's continued non-performance of  Employee's duties after having received notice from Employer specifying the act or acts alleged to constitute the non-performance; (iii) Employee's gross negligence or recklessness; (iv) conduct that constitutes material disloyalty to Employer, or that materially harms or has the potential to cause material harm to Employer; (v) the conviction of Employee of a felony or of any crime involving moral turpitude under state or federal law; (vi) the use, possession or sale of illegal drugs or controlled substances by Employee; (vii) a breach by Employee of Employee's representations, warranties,  or obligations under Sections 1B, 7, 8, or 9 of this Agreement; or (viii) a reasonable determination by Employer that Employee acted in a discriminatory or retaliatory manner toward any employee, that Employee has harassed an employee, or that Employee violated Employer's harassment policy, or committed any employment-related tort.

B.     Payment of Commissions Due.  Upon the termination of Employee's employment and this Agreement pursuant to Section 6.A., above, Employee shall be entitled to receive Employee's commissions earned through the last day of Employee's employment, payable in full within forty-five (45) days after the last day of Employee's employment. Employer shall have no further liability to Employee except as specifically outlined in this Agreement.

C.     Survival of Terms.   Notwithstanding the termination of Employee's employment and this Agreement, Employer shall have the right to enforce all terms and conditions in this Agreement, including but not limited to Section 7 (Employer's Records), Section 8 (Non-Competition), Section 9 (Non-Solicitation), Section 10 (Covenant Not to Hire), Section 11 (Covenant Not to Solicit Manufacturers), Section 12 (NuVasive, Inc.) and Section 13 (Confidential Information Disclosure Prohibition), which terms and conditions shall survive the termination of this Agreement and Employee's employment hereunder and shall remain in full force and effect; furthermore, the parties shall be required to carry out any provisions of this Agreement which contemplate performance by them subsequent to such termination.

7.     **Employer's Records**.   Employee understands and agrees that all records, materials and information relating to Employer's business whether in possession of Employer or Employee, are the exclusive property of Employer. Upon the last day of Employee's employment, Employee shall immediately and without demand return to Employer all such records, materials and information, and all copies thereof, in whatever form, in Employee's possession and immediately thereafter Employee shall have no further right of access to or any

6

right to obtain any of such records and materials or copies thereof, or any information contained therein, except as may be required by law and then only at the sole cost and expense of Employee.

8.     **Non-Competition**.     Employee acknowledges that during Employee's employment Employee will acquire confidential information about Employer's business, including but not limited to, its customers, manufacturers, suppliers and other proprietary, confidential information and/or that Employee may be responsible for contacting and developing relationships with Employer's customers. In order to protect Employer's critical interest in these relationships and information, Employee covenants and agrees as follows:

A.     During the term of this Agreement and for a period **of two (2) year** following Employee's last day of employment, Employee will not compete with Employer in Employee's Territory, as defined on Schedule A as it may be amended from time to time by Employer, by:

(1)     Selling and/or promoting any products that are competitive with any products sold and/or promoted by Employer on the last day of Employee's employment and which Employee sold and/or promoted while employed by Employer; or

(2)     Providing competing services directly to or on behalf of NuVasive, Inc., or by being employed in a competitive capacity by NuVasive, Inc.

B.     Employee agrees that competition shall include engaging in competitive activity as set forth in Section 8(A) above, whether on his own behalf, or as a director, shareholder, officer, partner, or joint venturer with any other person or entity, or as an employee, agent, or representative of any other person or entity. Notwithstanding the foregoing, ownership of five (5%) percent or less of any class of securities of an entity shall not constitute competition against Employer.

C.     If any provision of this Section 8 relating to the time period, geographic area or scope of the restrictive covenants shall be declared by a court of competent jurisdiction to exceed the maximum time period, geographic area or scope, as applicable, that such court deems reasonable and enforceable, said time period, geographic area or scope shall be deemed to be, and thereafter shall become, the maximum time period, scope or largest geographic area that such court deems reasonable and enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

9.     **Non-Solicitation**. In addition to the covenant not to compete set forth in Section 8 above, Employee further covenants and agrees as follows:

A.     For a period of two (2) years following the last day of Employee's employment, Employee will not compete with Employer within the Employee's Territory, by, in a competitive capacity:

(1)     Soliciting or accepting business competitive to Employer from, or providing competing products and/or services to, any person or entity, from whom or which Employee accepted business on behalf of Employer or to whom or which Employee provided

7

products and/or services on behalf of Employer during the one-year period preceding the last day of Employee's employment; or

(2)     Soliciting or accepting competing business from or providing competing products and/or services to, any person or entity from whom or which Employee personally solicited business on behalf of Employer during the three (3) month period immediately preceding the last day of Employee's employment.

B.     It is the specific intent of the parties that Employee shall be restricted from soliciting or accepting competing business regarding the same or similar products and/or services as Employee sold or provided while employed by Employer or products or services that compete with the products and/or services as Employee sold and/or provided while employed by Employer.

C.     If any provision of this Section 9 relating to the time period or scope of the restrictive covenants shall be declared by a court of competent jurisdiction to exceed the maximum time period or scope, as applicable, that such court deems reasonable and enforceable, said time period or scope shall be deemed to be, and thereafter shall become, the maximum time period or greatest scope that such court deems reasonable and enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

D.     <u>Covenant Not to Solicit or Hire Employer's Employees</u>. Employee agrees that during Employee's employment with Employer and for a period of one (1) year following the last day of Employee's employment, Employee shall not, directly or indirectly, solicit or induce, or attempt to solicit or induce, any individual employed by Employer at any time during the three-month period preceding Employee's last day of employment to leave Employer for any reason whatsoever or employ or otherwise hire any such employee for any reason whatsoever for Employee's or another's account.

E.     <u>Covenant Not to Solicit Manufacturers</u>. Employee further covenants and agrees that Employee will not enter into any agreement with any manufacturer or supplier of Employer that supplied products for sale and/or promotion to Employer during the one-year period prior to Employee's last day of employment (including NuVasive, Inc.), to sell and/or promote any products either sold by Employee on behalf of Employer or products competing with any products sold by Employee on behalf of Employer, other than as an employee of Employer, within the Employee's Territory.

10.     **NuVasive, Inc**. The parties understand and agree the Employer is a distributor of products manufactured and/or marketed by NuVasive, Inc. and that NuVasive, Inc. has a substantial, legitimate business interest in protecting its customer, employment, and other business relationships. The parties further understand and agree that NuVasive, Inc., and its successors and assigns, are intended to be and hereby are third party beneficiaries of this Agreement with full contractual and other rights to directly enforce the provisions set forth in Sections 8, 9, 10, 11, and 13 herein.

11.     **Confidential Information Disclosure Prohibition.**   Employee acknowledges that, in the course of performing Employee's duties, Employee shall become acquainted and entrusted with certain confidential information and/or proprietary information of Employer and NuVasive, Inc., including, but not limited to, customer lists and information, financial data, referral source information, product information and marketing programs (the "Confidential Information"). Employee agrees to treat all Confidential Information entrusted to Employee as fiduciary, and accepts and undertakes all the obligations of a fiduciary, including good faith, trust, confidence and candor, to maintain protect and develop Confidential Information for the benefit of the Company. Employee will not cause or allow such Confidential Information to be exposed to unauthorized persons and that Employee will not, without the prior written consent of Employer or NuVasive, Inc., as applicable, disclose, divulge, or make any use of such Confidential Information during Employee's employment or at any time after the last day of Employee's employment, except as directed by Employer in connection with Employee's duties pursuant to this Agreement and as may be required by law. Employee further agrees to notify Employer or NuVasive, Inc., as applicable, immediately of any third party whom Employee knows or discovers to be in possession of such Confidential Information.

12.     **Handling of Confidential Information.**

A.     <u>Customer List</u>**.** Employee shall, at the time of and during employment furnish a complete list of all of the correct names and places of businesses of all its customers, promptly notify Employer of the name and address of any new customer and report all changes in location of old customers so that upon the termination of employment, Employer will have a complete list of the correct names and addresses of customers with whom Employee had dealt.

B.     <u>Development of Intellectual Property</u>. Employee may make, discover or develop inventions, ideas, trade secrets, financial materials, computer programs, discoveries, developmental improvements, know how, processes and devices related to or used in the conduct of Employee's performance of services for an on behalf of Employer ("Developments") Employee agrees to disclose fully and promptly to Employer any of said Developments. Further, Employee agrees that Employer is the sole and exclusive owner of said Developments; the Employee retains no ownership in said Developments; and said Developments become part of the Employer's Confidential Information for purposes of this Agreement. Employer and Employee agree that if the Developments or any portion thereof are copyrightable, it shall be deemed "work for hire" as such term is defined in the U.S. Copyright Act. Employee shall execute and deliver to Employer any and all licenses, applications, assignments and other documents and take any and all actions that Employer may deem necessary or desirable to protect Employer rights in said Developments**.**

9

13. **Injunctive Relief**.

A.    Employer and Employee agree that irreparable injury will result to Employer in the event Employee violates any restrictive covenant or affirmative obligation contained in Sections 8, 9, 10, 11, 12, and 13 of this Agreement, and Employee acknowledges that the remedies at law for any breach by Employee of such provisions will be inadequate and that Employer shall be entitled to injunctive relief against Employee, in addition to any other remedy that is available, at law or in equity.

B.    Employee agrees that the non-competition, non-disclosure, and non-solicitation obligations contained herein shall be extended by the length of time which Employee shall have been in breach of any of said provisions. Accordingly, Employee recognizes that the time periods included in the restrictive covenants contained herein shall begin on the date a court of competent jurisdiction enters an order enjoining Employee from violating such provisions unless good cause can be shown as to why the periods described should not begin at that time.

14.    **Indemnity.**    Employee shall indemnify and hold harmless Employer, its successors and assigns, from and against any and all liabilities, costs, damages, expenses and attorneys' fees resulting from or attributable to any and all negligent or intentional acts and omissions of Employee; provided, however, that to the extent that any such liabilities, costs, damages, expenses and attorneys' fees are covered by insurance maintained by Employer, Employee shall be required to reimburse Employer only for any uncovered loss or damages Employer incurs including, without limitation, any deductible charged to Employer. Notwithstanding anything else to the contrary, Employer shall indemnify and hold harmless Employee from and against any and all liabilities, costs, damages, expenses and attorneys' fees arising from or relating to any claims by Employee's prior employer concerning the non-competition or non-solicitation portions of Employee's agreement with such employer about which Employee has made Employer aware.

15.    **Termination of Prior Agreements**.    This Agreement constitutes the entire agreement between the parties and supersedes all prior or contemporaneous agreements, representations and understandings of every kind between the parties hereto, all of which are hereby terminated.

16.    **Effect of Agreement.**    This Agreement shall be binding on and inure to the respective benefit of Employee and his personal representatives and Employer and its successors and assigns.

17.    **Modification**. No provision of this Agreement, including the provisions of this paragraph, may be modified, deleted or amended in any manner except by an agreement in writing executed by the parties hereto.

18.    **Succession and Assignment**. The obligations of Employee under this Agreement shall continue after the last day of Employee's employment and shall be binding on Employee's heirs, executors, legal representatives and assigns. Such obligations shall inure to the benefit of any successors or assigns of Employer. Employee specifically acknowledges that in the event of a sale of all or substantially all of the assets of Employer, or any other event or transaction resulting in a change of ownership or control of Employer's business, the rights and obligations

10

of the parties hereunder shall inure to the benefit of any transferee, purchaser, or future owner of Employer's business.  This Agreement may be assigned only by Employer.

19.     **<u>Interpretation</u>**.   If any part of any covenant or provision contained in this Agreement is determined by a court of competent jurisdiction to be invalid, illegal, overbroad, or

11

incapable of being enforced, then the court so deciding shall interpret such provision(s) in a manner so as to enforce them to the fullest extent of the law. In particular, the parties expressly agree that any court may deem "Employee's Territory" to mean the broadest territory described in <u>Schedule A</u> that is legally enforceable.

20.   **Severability.** Each of the sections and subsections contained in this Agreement shall be enforceable independently of every other section and subsection in this Agreement, and the invalidity or non-enforceability of any section or subsection shall not invalidate or render nonenforceable any other section or subsection contained herein.  If any section or subsection in a section is found invalid or unenforceable, it is the intent of the parties that a court of competent jurisdiction shall reform the section or subsection to produce its nearest enforceable economic equivalent. Without limiting the foregoing, in the event the restrictions on competition or solicitation as set forth in <u>Sections 8 or 9</u> are determined to be invalid, overbroad, or unenforceable, the parties expressly agree that the provisions in these Sections shall be deemed severable, and the invalidity or unenforceability of any provision (or part thereof) shall in no way effect the validity or enforceability of any other provision (or remaining part thereof).

21.   **Restrictive Covenants of the Essence.**   The restrictive covenants upon the Employee set forth herein are of the essence of this Agreement; they shall be construed as independent of any other provision in this Agreement. The existence of any claim or cause of action of the Employee against Employer, whether predicated on this Agreement or not, shall not constitute a defense to the enforcement by Employer of the restrictive covenants contained herein. Employee acknowledges and agrees that the restrictive covenants are reasonably necessary for the protection of Employer and that such restrictive covenants are reasonably limited with respect to the activities prohibited, the duration thereof, the geographical area thereof, the scope thereof and the effect on Employee and the general public. Employee further acknowledges and agrees that the purpose and effect of such restrictive covenants is solely to protect Employer for a limited period of time from unfair competition by Employee, and that the initiation of employment of Employee as described in this Agreement is conditioned upon Employee agreeing to abide by and be bound by all of the restrictive covenants and provisions contained in this Agreement.

22.   **Attorneys Fees.** In the event either party is caused to seek injunctive or any other form of equitable relief and is successful in its attempts, and/or either party is caused to file a lawsuit in  order to enforce the terms of this Agreement and either party obtains a final judgment from a court of competent jurisdiction pursuant to which the other party is determined to have breached his/her obligations under this Agreement, the non breaching party shall be entitled to recover, in addition to any award of damages, its reasonable attorneys fees, costs, and expenses incurred in obtaining such equitable relief and/or final judgment. The parties agree that the provisions of this paragraph are  reasonable and necessary.

23.   **Applicable Law.** Questions with respect to the construction, performance, and enforceability of this Agreement and the rights and liabilities of the parties hereunder shall be determined in accordance with the laws of the State of North Carolina, without regard to its conflict of laws provisions. The parties hereto submit to the jurisdiction of the courts of North Carolina with respect to this Agreement and all matters arising hereunder, and they agree that the

venue for resolution of any dispute arising hereunder shall be the appropriate state or federal courts within North Carolina.

24.   **Notice**. All notices, requests, demands, and other communications required or that may be given hereunder shall be in writing and shall be deemed to have been duly given when received, if delivered in person, or sent by certified mail, postage prepaid, return receipt requested or sent by nationally recognized overnight courier service, and addressed to the last known address of the parties hereto.

25.   **No Waiver.**   The failure of either party to this Agreement to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms and conditions of this Agreement, shall not be construed as subsequently waiving any such terms and conditions, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

26.   **Original Copies.** This Agreement may be executed in more than one counterpart, each of which shall be deemed an original.

27.   **Headings.** The underlined headings herein are for convenience of reference only and shall not affect the interpretation of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

EMPLOYER:

InoSpine, LLC

By: _____
      Jarrett Clay, Member/Manager

EMPLOYEE:

*Kenneth Kormius*        2/12/2014
_____

13

## SCHEDULE A
## EMPLOYEE'S TERRITORY

 A. Employee shall perform duties in the following listed cities and/or counties (as may be amended from time to time), in North Carolina and such other cities and/or counties in North Carolina as Employee may be assigned, or may actually perform duties, during the term of this Agreement or Employee's employment with Employer ("Employee's Territory"):

Counties:  Guilford, Forsyth, Stokes, Rockingham.

## **SCHEDULE B (COMMISSION)**

Employee shall be compensated on a pure commission basis.  Employer shall determine the commission rate for each pay period, at the commission structure discussed with Employee by Employer, and said determination shall be in the sole and absolute discretion of Employer.

15